## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA and INDIANA STATE CONFERENCE OF THE NAACP,<br><br>*Plaintiffs*,<br><br>v.<br><br>CONNIE LAWSON, in her official capacity as Indiana Secretary of State, and PAUL OKESON, S. ANTHONY LONG, SUZANNAH WILSON OVERHOLT, and ZACHARY E. KLUTZ, in their official capacities as members of the Indiana Election Commission,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:20-cv-2007<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Common Cause Indiana and Indiana State Conference of the NAACP, by their undersigned counsel, and for their Complaint against Defendant members of the Indiana Election Commission and Indiana Secretary of State Connie Lawson, allege as follows:

## INTRODUCTION

1.      Under Indiana law, a ballot cast by mail must be received by the local county election board by noon on Election Day ("Noon Election Day Receipt Deadline"). Ballots received after the noon deadline are not counted. This law disenfranchises thousands of Hoosiers who timely request and promptly fill out and mail back their ballots, only for them to arrive after the Noon Election Day Receipt Deadline—through no fault of their own.

2.      While even in the best of times the Noon Election Day Receipt Deadline disenfranchises voters, this is not the best of times. The ongoing COVID-19 pandemic has

created a number of new and significant challenges for voters and election officials, including serious health risks to in-person voting and significant delays in mail-in ballot delivery. The availability of voting by mail is essential to conducting a safe and accessible election during the pandemic. However, the pandemic has also created conditions that make it more difficult—or even impossible—for Indiana voters to successfully comply with the Noon Election Day Receipt Deadline for mail-in ballots.

3.        In Indiana alone, 64,299 people have tested positive for the disease and 2,733 people have died from it.[1] One of the primary methods encouraged by public officials to combat the disease is "social distancing," which requires people to avoid congregating and stay at least six feet apart. The highly contagious nature of the virus makes all voters and poll workers vulnerable to infection while voting in person. Voters of color, who already face disproportionately longer in-person voting times that would increase the risk of exposure,[2] are also disproportionately likely to contract and to die from the virus.[3]

4.        On March 25, 2020, the State of Indiana postponed its previously scheduled May 5, 2020 statewide primary election to June 2, 2020 because of the risk of spreading COVID-19 through in-person voting.[4] Indiana also expanded access to voting by mail for the June primary election, and an unprecedented number of voters opted to use this safer method.

---

[1] This data is current as of 11:59 PM on July 28, 2020. *See Indiana COVID-19 Data Report*, Indiana COVID-19 Dashboard, https://www.coronavirus.in.gov/2393.htm (last visited July 29, 2020).

[2] Stephen Pettigrew, *The Racial Gap in Wait Times: Why Minority Precincts Are Underserved by Local Election Officials*, 132 Pol. Sci. Q. 527 (2017); M. Keith Chen, Kareem Haggag, Devin G. Pope & Ryne Rohla, *Racial Disparities in Voting Wait Times: Evidence from Smartphone Data*, NBER Working Paper No. 26487 (2019).

[3] Richard A. Oppel, Jr., et al., *The Fullest Look Yet at the Racial Inequity of Coronavirus*, New York Times (July 5, 2020), https://www.nytimes.com/interactive/2020/07/05/us/coronavirus-latinos-african-americans-cdc-data.html.

[4] Tom Davies, *Indiana's May 5 Primary Postponed due to Coronavirus Threat*, ABC New & Associated Press (Mar. 20, 2020), https://abcnews.go.com/Health/wireStory/indianas-primary-postponed-due-coronavirus-%20threat-69709205.

Statewide, nearly 550,000 Hoosiers requested mail-in ballots[5]—more than ten times the number requested in the 2016 presidential primary[6]—despite the lack of a competitive presidential race for either major political party.

5.      The increase in mail-in voting was even higher in Marion County, which received twenty times the number of requests for mail-in ballots as compared to the 2016 presidential primary.[7] Approximately forty-six percent of residents in Marion County are people of color, and Marion County is home to significant populations of Black and Latino citizens.[8] In Lake County, also made up of approximately forty-six percent people of color[9] and with significant populations of Black and Latino citizens, county officials similarly received a substantially higher number of mail-in ballots than previous presidential primary elections.[10]

6.      The expected increase in the number of Indiana voters using a mail-in option for the November 3, 2020 election due to the COVID-19 pandemic, combined with continuing delays in mail delivery, mean that even more voters face likely disenfranchisement because of

---

[5] Indiana has four types of absentee voting: 1) absentee voting by mail; 2) absentee voting in-person (before election day); 3) absentee voting by traveling board; and 4) absentee voting by military overseas citizens. *See* Ind. Code §§ 3-11-4-1(a); 3-11-10-24; 3-11-10-25; 3-11-4-6. The terms "mail-in ballot" and "mail voting" are used in this complaint to refer to absentee voting by mail.

[6] Associated Press, *Indiana Won't Change Mail-In Ballot Deadline Despite Worries*, WLFI (May 31, 2020), https://www.wlfi.com/content/news/Indiana-wont-change-mail-in-ballot-deadline-despite-worries-570904381.html.

[7] Associated Press, *Indianapolis Official: Many Mail-In Ballots May Go Uncounted*, WFYI Indianapolis (May 29, 2020), https://www.wfyi.org/news/articles/indianapolis-official-many-mail-in-ballots-may-go-uncounted.

[8] United States Census Bureau, QuickFacts, Marion County, Indiana (accessed July 27, 2020), https://www.census.gov/quickfacts/marioncountyindiana.

[9] United States Census Bureau, QuickFacts, Lake County, Indiana (accessed July 27, 2020), https://www.census.gov/quickfacts/lakecountyindiana.

[10] Alexandra Kukulka & Amy Lavalley, *Lake County Election Workers Begin Counting More Than 27,000 Mail-in Ballots Tuesday; Smooth Start in Porter County*, Chicago Tribune (June 2, 2020), https://www.chicagotribune.com/suburbs/post-tribune/ct-ptb-election-night-coverage-st-0603-20200602-hn2gpccl7bdy3dnhun4llhe5vq-story.html.

inability to comply with the Noon Election Day Receipt Deadline. The risk of disenfranchisement resulting from early ballot receipt deadlines is particularly pronounced for young voters and voters of color.[11]

7.      The Noon Election Day Receipt Deadline must be enjoined before it further infringes on Hoosiers' fundamental right to vote in the November 3, 2020 election.

## JURISDICTION AND VENUE

8.      Because Plaintiffs set forth claims under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, this Court has subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights cases). Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

9.      Venue is appropriate in this Court because Defendants have their principal offices in Indianapolis and "reside" in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

10.      Plaintiff Common Cause Indiana ("CCIN") is the Indiana affiliate of Common Cause, a non-profit, nonpartisan public-interest group, which advocates in favor of ethics, good government, constitutional law, and the elimination of barriers to voting. Common Cause Indiana is based in Indianapolis, Indiana, and it has worked to ensure the franchise to Indiana citizens for 46 years. CCIN has at least 15,000 members who are eligible to vote in state and

---

[11] *See* Elise Viebeck & Michelle Ye Hee Lee, *Tens of Thousands of Mail Ballots Have Been Tossed Out in This Year's Primaries. What Will Happen in November?*, Washington Post (July 16, 2020), https://www.washingtonpost.com/politics/tens-of-thousands-of-mail-ballots-have-been-tossed-out-in-this-years-primaries-what-will-happen-in-november/2020/07/16/fa5d7e96-c527-11ea-b037-f9711f89ee46_story.html. *See also* Pam Fessler & Elena Moore, *Signed, Sealed, Undelivered: Thousands of Mail-In Ballots Rejected for Tardiness*, NPR (July 13, 2020), https://www.npr.org/2020/07/13/889751095/signed-sealed-undelivered-thousands-of-mail-in-ballots-rejected-for-tardiness.

4

federal elections in Indiana. Many members of CCIN are statutorily entitled to vote by mail-in ballot,[12] and they are at risk of having their ballot rejected by election officials solely because it does not arrive by the Noon Election Day Receipt Deadline, though no fault of their own. CCIN has both associational and organizational standing to assert its claims against Defendants.

11. As a result of the Noon Election Day Receipt Deadline, Plaintiff CCIN has had to expend resources to ensure that voters understand how to use mail-in ballots, including educating about the need to return ballots early. CCIN additionally has had to spend significant time educating other community groups about the risk of disenfranchisement due to the noon deadline. CCIN has devoted time to engaging its membership base about this issue. These activities have diverted resources away from CCIN's work in furtherance of its core mission.

12. Plaintiff Indiana State Conference of the NAACP ("NAACP") is a nonpartisan, nonprofit organization chartered in 1940 and currently based in Gary, Indiana. It was founded with the purpose of assisting African-American citizens to ensure political, educational, social and economic equality of rights for all persons and to fight against racial discrimination. Throughout its history, the NAACP has made it its mission to promote civic engagement by educating voters, monitoring polls, and facilitating voter registration. The majority of its approximately 5,000 members are residents of Indiana who are registered to vote in Indiana and who participate in all aspects of the political process. Many members of the NAACP are statutorily entitled to vote by mail, and are at risk of having their ballot rejected by election officials solely because it does not arrive by the Noon Election Day Receipt Deadline,

---

[12] Indiana state law sets forth specific limited categories of voters who are entitled to vote by mail. Ind. Code § 3-11-10-24.

through no fault of their own. The NAACP has both associational and organizational standing to assert its claims against Defendants.

13.     As a result of the Noon Election Day Receipt Deadline, Plaintiff NAACP has had to divert resources to educate voters, help people understand how to vote by absentee ballot, and publicize the importance of returning ballots early. These activities have diverted resources away from NAACP's work in furtherance of its core mission.

14.     Defendant Connie Lawson is the Indiana Secretary of State and is sued in her official capacity. She is the chief election official of the State, with her primary office in this judicial district. Ind. Code § 3-6-3.7-1. She is charged with overseeing and performing "all ministerial duties related to the administration of elections by the state" of Indiana. Ind. Code § 3-6-4.2-2(a). She is also responsible for enforcing and implementing Indiana's election laws, for overseeing all elections in Indiana, and she routinely issues guidance to county election officials in each of Indiana's 92 counties through her appointees to the Indiana Election Division and via the Indiana Election Administrator's Manual and other materials and related training.

15.     Defendants Paul Okeson, S. Anthony Long, Suzannah Wilson Overholt, and Zachary E. Klutz are members of the INDIANA ELECTION COMMISSION, which is charged with administering Indiana election laws. Ind. Code § 3-6-4.1-14(a)(1). This includes the responsibility to adopt rules to "[g]overn the fair, legal, and orderly conduct of elections," *id.* § 3-6-4.1-14(a)(2), including "[e]mergency rules…to implement a court order requiring the commission, the election division, or an election board or official to administer an election in a manner not authorized by this title," *id.*, and to "[a]dvise and exercise supervision over local election and registration officers," *id.* § 3-6-4.1-14(a)(3). Each is acting and will continue to act under color of state law, and each is sued in his or her official capacity.

**FACTS**

16.     The novel coronavirus, and the disease it causes, known as COVID-19, is an acute respiratory illness that, to date, has killed approximately 150,000 persons nationwide.[13] There is currently no known cure, no effective treatment, and no vaccine. People who are infected but asymptomatic may inadvertently and unknowingly infect others. As a result of this pandemic, federal, state, county, and city officials have put in place various guidelines and limitations in Indiana, the central feature of which is to limit human contact either through in-home isolation or avoiding large gatherings, commonly known as "social distancing."

17.     Public health officials warn that the pandemic is likely to worsen[14] and that infection rates may surge in advance of the November 3, 2020 election.[15] There is no guarantee that an effective vaccine, once approved, will give more than short-term protection; nor is a vaccine expected to be proven, let alone widely available, in advance of the November 3, 2020 election.[16]

---

[13] *Coronavirus Disease 2019 (COVID-19) Cases and Deaths in the U.S.,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/us-cases-deaths.html (last updated July 29, 2020).

[14] John Lauerman, *Covid-19 Pandemic Likely to Last Two Years, Report Says*, Bloomberg News (May 1, 2020), *available at* https://www.bloomberg.com/news/articles/2020-05-01/covid-19-pandemic-likely-to-last-two-years-report-says (citing report from the Center for Infectious Disease Research and Policy at the University of Minnesota); *Transcript: Dr. Michael Osterholm speaks with Michael Morell on "Intelligence Matters"*, CBS News (May 13, 2020), *available at* https://www.cbsnews.com/news/transcript-dr-michael-osterholm-speaks-with-michael-morell-on-intelligence-matters/ (estimating COVID-19 will infect 60-70% of Americans resulting in between 800,000 and 1.6 million deaths over 18 months without a successful vaccine).

[15] Alexa Lardieri, *New Projections Suggest Coronavirus Deaths will Surge Ahead of 2020 Election*, U.S. News and World Report (June 16, 2020), https://www.usnews.com/news/health-news/articles/2020-06-16/new-projections-suggest-coronavirus-deaths-will-surge-ahead-of-2020-election (citing a new projection from the Institute for Health Metrics and Evaluation that the United States could see 3,200 deaths per day from COVID-19 in September 2020 and daily infections "as high as half a million.").

[16] *Dr. Anthony Fauci & CDC Director Senate Testimony Transcript* at 32, Rev (May 12, 2020), *available at* https://www.rev.com/blog/transcripts/dr-anthony-fauci-cdc-director-senate-testimony-transcript-may-12; Carolyn Y. Johnson, *Two Coronavirus Vaccines Begin the Last Phase of Testing: 30,000-Person Trials*, Washington Post (July 27, 2020), *available at* https://www.washingtonpost.com/health/2020/07/27/moderna-nih-launch-30000-person-trial-coronavirus-vaccine/ (estimating effectiveness of initial vaccine will be determined in November or December 2020).

18.     Despite the state's efforts to contain the virus, public health officials have recently warned that rapidly-increasing infection rates put Indiana at risk of an even more serious outbreak.[17]

19.     Given these extraordinary circumstances, it is not surprising that Hoosiers relied on mail voting at an unprecedented level for the June 2, 2020 election, and they will likely do so again in record numbers for the November 3, 2020 election.

20.     In separate orders issued March 25 and April 17, 2020, Defendant members of the Indiana Election Commission ("IEC"), using the emergency powers vested in them under Indiana law, postponed Indiana's primary election from May 5 to June 2, 2020.[18] These orders also suspended and modified numerous statutory deadlines to accommodate this postponement—though not the Noon Election Day Receipt Deadline.

21.     The IEC also expanded eligibility to vote by mail, ruling that the words "voter with disabilities" in Ind. Code § 3-11-10-24(a)(4) be construed for purposes of the rescheduled primary election to include any "voter who is unable to complete their ballot because they are temporarily unable to physically touch or be in safe proximity to another person."[19]

---

[17] Noah Higgins-Dunn, *Fauci Says There are Early Signs Coronavirus Outbreaks are Brewing in Ohio, Indiana, Kentucky and Tenessee*, CNBC (July 28, 2020), *available at* https://www.cnbc.com/2020/07/28/fauci-says-there-are-early-signs-coronavirus-outbreaks-are-brewing-in-ohio-indiana-kentucky-and-tennessee.html.

[18] Ind. Election Comm'n, Order No. 2020-37, Concerning Emergency Provisions Affecting the 2020 Indiana Primary Election (Mar. 25, 2020), *available at* https://www.in.gov/sos/elections/files/Indiana%20Election%20Commission%20Order%202020-37%20(002)%20g.pdf; Ind. Election Comm'n, Order No. 2020-40, Concerning Emergency Provisions Affecting the 2020 Indiana Primary Election (April 17, 2020), *available at* https://www.in.gov/sos/elections/files/Order%202020-40%20signed.pdf.

[19] Ind. Election Comm'n, Order No. 2020-37, Concerning Emergency Provisions Affecting the 2020 Indiana Primary Election, Section 9A (Mar. 25, 2020), *available at* https://www.in.gov/sos/elections/files/Indiana%20Election%20Commission%20Order%202020-37%20(002)%20g.pdf.

22.     Under Indiana law, a county election board "must receive an absentee ballot [including a mail-in ballot] before noon on election day" for it to be counted, irrespective of when it was actually mailed by the voter. Ind. Code § 3-11.5-4-3. Mail-in ballots received after noon on Election Day "are considered as arriving too late and may not be counted." Ind. Code § 3-11.5-4-10 (together with Ind. Code § 3-11.5-4-3, the "Noon Election Day Receipt Deadline").

23.     Indiana voters must submit their application for a mail-in ballot twelve or more days prior to Election Day. Ind. Code § 3-11-4-3(a)(4)(A).[20] Even with this early application deadline, many Indiana voters in the June 2, 2020 election did not receive their mail ballot until close to Election Day, making it impossible for them to return it in time to comply with the Noon Election Day Receipt Deadline. This delay in mail delivery was entirely out of their control.

24.     The pandemic has placed significant strain on election administrators and postal workers alike. The need to maintain social distancing limits the number of election officials who can be assigned to process mail-in ballot applications at any one time. Thousands of postal workers have contracted COVID-19, dozens have died, and tens of thousands have had to quarantine for two weeks after being exposed to the virus.[21] These challenges combined with the

---

[20] Federal law requires that, in elections for electors for President and Vice-President, voters "who may be absent from their election district or unit in such State on the day such election is held" must be able to vote by absentee ballot if they "have applied therefor not later than seven days immediately prior to such election," 52 U.S.C. § 10502(d). Given the evidence of delays in mail delivery, voters who apply for a mail-in ballot under this provision will be even more likely to be unable to receive and return their mail ballots in time to satisfy the Noon Election Day Receipt Deadline in the November 3, 2020 election.

[21] Nicole Goodkind, *Trump-Backed Postmaster General Plans to Slow Mail Delivery*, Fortune (July 24, 2020), https://fortune.com/2020/07/24/usps-mail-delivery-postmaster-general-louis-dejoy-us-postal-service/.

surge in mail-in voting to create a perfect storm in the June 2, 2020 election, resulting in

significant delays in the transmission of ballots to voters and then back to election officials.[22]

25.     As a result, thousands of otherwise-valid ballots were rejected and not counted in

the June 2, 2020 primary election solely because they were received after the Noon Election Day

Receipt Deadline, even though voters had timely requested and promptly returned their ballots

after receiving them. In Marion County alone, a total of 1,514 otherwise-valid ballots were

rejected despite having been postmarked on or before June 2. In Hamilton County, 435 such

ballots were rejected. Similar numbers in other counties are likely, pushing the total number of

affected voters into the thousands.

26.     Despite repeated warnings of the widespread disenfranchisement that would result

from their failure to act,[23] Defendants failed and refused to use their emergency powers to

modify the Noon Election Day Receipt Deadline for the June 2, 2020 primary election, and have

thus far refused to do so for the November 3, 2020 general election. In a May 29, 2020 letter to

Myla Eldridge, Marion County Clerk, Defendant Lawson offered only the vague assertion that

this and other election deadlines serve unspecified "security and accountability purposes" as

justification for this refusal.[24]

---

[22] *See, e.g.,* Amelia Pak-Harvey, *Nearly 1,800 absentee ballots left uncounted in Marion County primary election*, The Indianapolis Star (June 15, 2020), https://www.indystar.com/story/news/local/marion-county/2020/06/15/indiana-primary-marion-county-absentee-ballots-left-uncounted/5334101002/. *See also* Ryan McCarthy and Maryam Jameel, *The Postal Service is Steadily Getting Worse—Can it Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election (noting "[T]here already have been significant delays and mistakes in delivering ballots in Indiana" among other states.).

[23] *See, e.g.,* Letter from Myla A. Eldridge, Marion County Clerk, to Connie Lawson, Ind, Sec. of State (May 28, 2020) (on file with author) (discussing the likelihood of widespread voter disenfranchisement because of the Noon Election Day Receipt Deadline).

[24] Letter from Connie Lawson, Ind. Sec. of State, to Myla A. Eldridge, Marion County Clerk (May 29, 2020).

27.     The Noon Election Day Receipt Deadline caused the disenfranchisement of thousands of voters in the June 2, 2020 Indiana primary election. Unless Defendants are enjoined by this Court to require the counting of mail-in ballots postmarked on or before Election Day and received within a reasonable time afterwards, the Noon Election Day Receipt Deadline will cause an even more significant wave of disenfranchisement in the November 3, 2020 general election, when voter participation is expected to be significantly greater and delays in mail delivery are likely to be even longer and more widespread.[25]

28.     Indiana law provides no practical or realistic notice or opportunity to cure for voters who do not receive their mail-in ballot, receive it too late to mail it back in time to be received by the deadline, or whose returned ballot is ultimately not delivered to the county election board by the Noon Election Day Receipt Deadline. As a result, voters who otherwise might be able to avoid disenfranchisement by requesting another mail-in ballot, by dropping off their mail-in ballot themselves, or by voting in person are deprived of these opportunities. This lack of procedural safeguards is particularly glaring because Indiana law contemplates—but does not require—mail-in ballots to be assigned a unique tracking number that would enable voters to track their ballots in real time, a service already offered and facilitated by the United States Postal Service. *See* Ind. Code § 3-11-4-18(a).

29.     Plaintiffs seek a preliminary injunction from this Court, enjoining enforcement of the Noon Election Day Receipt Deadline in the November 3, 2020 election and ordering all ballots to be counted which are postmarked on or before Election Day and received up to ten (10) days thereafter—the period already provided for under Indiana law for the counting of

---

[25] *See, e.g.*, Nicole Goodkind, *Trump-Backed Postmaster General Plans to Slow Mail Delivery*, Fortune (July 24, 2020), https://fortune.com/2020/07/24/usps-mail-delivery-postmaster-general-louis-dejoy-us-postal-service/ (noting the decision to eliminate postal worker overtime and data showing that "nearly 20% of all work by mail handlers, city carriers, and postal drivers is done in overtime").

provisional ballots, *see* Ind. Code § 3-11.7-5-1, for mail-in ballots from overseas voters,

*see* Ind. Code § 3-12-1-17, and the period that was provided by Defendants IEC for the counting

of mail-in ballots in the June 2, 2020 election, *see* IEC Order 2020-37, Section 15D.

## CLAIM FOR RELIEF

### Undue Burden on the Fundamental Right to Vote in Violation of the
### First and Fourteenth Amendments to the United States Constitution

30.    Plaintiffs realleges and incorporates by reference all prior paragraphs of this

Complaint and the paragraphs in the counts below as though fully set forth herein.

31.    The Noon Election Day Receipt Deadline, particularly in the context of the

ongoing COVID-19 pandemic, imposes an undue burden on voters' fundamental right to vote in

violation of the First and Fourteenth Amendments to the United States Constitution.

32.    Under the First and Fourteenth Amendments to the United States Constitution, a

court considering a challenge to a state election law must carefully balance the character and

magnitude of injury to the plaintiff's right to vote against "the precise interests put forward by

the State as justifications for the burden imposed by its rule, taking into consideration the extent

to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*,

504 U.S. 428, 434 (1992) (internal quotation marks omitted); *Anderson v. Celebrezze*, 460 U.S.

780, 789 (1983). "However slight th[e] burden may appear, . . . it must be justified by relevant

and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v.*

*Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling opinion) (internal

quotation marks omitted); *accord Tripp v. Scholz*, 872 F.3d 857, 864 (7th Cir. 2017).

33.    Unless Plaintiffs are granted the relief requested herein, the right to vote, and to

have that vote count, of the thousands of members of Plaintiffs CCIN and NAACP, and tens of

thousands of Indiana voters, will be significantly burdened if not wholly extinguished by

application of the Noon Election Day Receipt Deadline for the November 3, 2020 general election.

34.     Because of the high risk of exposure to the novel coronavirus during the pandemic, casting a mail-in ballot has become the safest way to vote. However, CCIN's and NAACP's members who are qualified Indiana voters are at a high risk of not receiving their ballot in sufficient time to mail them to their respective county election board so that they are received prior to the Noon Election Day Receipt Deadline.

35.     Even if CCIN's and NAACP's members who request mail-in ballots receive and send back their ballots in a timely fashion, these voters are still at risk of having their ballot delivered to the county election board after the Noon Election Day Receipt Deadline, through no fault of the voter.

36.     Particularly against the backdrop of this unprecedented public health crisis, Defendants cannot provide any sufficiently weighty justification for enforcing the Noon Election Day Receipt Deadline in the November 3, 2020 election, nor for why ballots postmarked on or before Election Day and received within ten days after that Deadline should not be counted.

37.     Any purported state interest in receiving mail-in ballots by noon on Election Day related to the time needed to transport ballots to each individual precinct for counting on Election Day was rendered an anachronism by the state's recent decision to require county election officials to count mail-in ballots at a central location. Before 2019, mail-in ballots in some counties were transported to each polling place to be counted on election night. Beginning July 1, 2019, mail-in ballot counting procedures changed to instead require that all mail-in ballots be counted in one or more central locations. *See* Ind. Code § 3-11.5-1-1.1.

38.     Moreover, requiring receipt of mail-in ballots by any time on Election Day—let alone the Noon Election Day Receipt Deadline—cannot be necessary to ensure that all ballots are counted in a reasonable time, because the Indiana Code already provides for a ten-day period following Election Day during which provisional ballots and mail-in ballots from overseas voters are counted.

39.     The state has thus far failed to articulate any relevant and legitimate state interest for continuing to enforce the Noon Election Day Receipt Deadline even when presented with clear evidence of delays in the processing and delivery of mail-in ballots prior to the June 2, 2020 election.

40.     The Noon Election Day Receipt Deadline, particularly as applied during the pandemic, does not advance any state interest sufficiently weighty to justify the resulting burdens on the right to vote, and it therefore violates the First and Fourteenth Amendments and must be enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A.  Declaring that Indiana's Noon Election Day Receipt Deadline, I.C. §§ 3-11.5-4-3 and -10, violates the First and Fourteenth Amendments to the United States Constitution on its face and as-applied to the November 3, 2020 election;

B.  Preliminarily enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control, from rejecting mail-in ballots that are postmarked on or before November 3, 2020, and which arrive at the county clerk's office on or before November 13, 2020;

C.  Ordering Defendants to instruct all county election boards and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control not to reject mail-in ballots postmarked on or before November 3, 2020 and received on or before November 13, 2020, and to ensure that such ballots are counted if otherwise valid;

D.  Ordering Defendants to instruct all county election boards not to reject mail-in ballots dropped off in person at any polling location on Election Day and to ensure that such ballots are counted if otherwise valid;

E.  Ordering Defendants to adopt and implement the mail-in ballot tracking capability provided by the United States Postal Service and instruct all county election boards to do the same;

F.  Ordering Defendants to provide notice to voters of all forms of relief ordered by the court through public media, including through relevant internet websites maintained by Defendants and to instruct county election officials to do the same and to provide printed notice of the same included with all mail-in voting materials;

G.  Permanently enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them or under their direction or control, from enforcing Indiana's Noon Election Day Receipt Deadline, I.C. §§ 3-11.5-4-3 and -10;

H.  Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

I.  Granting such other relief as the Court may deem just and proper.

Dated: July 30, 2020

*s/ William R. Groth*
William R. Groth, Of Counsel
Macey Swanson LLP
445 N. Pennsylvania St., Suite 401
Indianapolis, IN 46204
Telephone: (317) 637-2345, Ext. 132
Cell: (317) 502-4803
WGroth@fdgtlaborlaw.com

*s/ Mark W. Sniderman*
Mark W. Sniderman
Findling Park Conyers Woody & Sniderman, P.C.
151 North Delaware St., Ste.1520
Indianapolis, IN  46204
(317) 231-1100
msniderman@findlingpark.com

Aneel L. Chablani (*pro hac vice forthcoming*)
Ami Gandhi (*pro hac vice forthcoming*)
Jennifer Terrell (*pro hac vice forthcoming*)
Chicago Lawyers' Committee for Civil Rights
100 North LaSalle Street
Suite 600
Chicago, IL 60602
(312) 888-4191 (tel.)
(312) 630-1127 (fax)
achablani@clccrul.org
agandhi@clccrul.org
jterrell@clccrul.org

Ezra Rosenberg (*pro hac vice forthcoming*)
Bradley Phillips (*pro hac vice forthcoming*)
Ryan Snow (*pro hac vice forthcoming*)
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW
Suite 900
Washington, DC 20005
(202) 662-8600 (tel.)
(202) 783-0857 (fax)
erosenberg@lawyerscommittee.org
bphillips@lawyerscommittee.org
rsnow@lawyerscommittee.org

*Attorneys for Common Cause Indiana and Indiana State Conference of the NAACP*